Charles Edwin HOGUE

v.

WILCOX & ZIEGLER, INCORPORAT-
ED, a corporation of the State
of Maryland.

Civ. No. 11087.

United States District Court
D. Maryland.

Nov. 5, 1959.

Leonard J. Kerpelman, Baltimore, Md., for plaintiff.

H. Donald Schwaab, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff in this action under the Fair Labor Standards Act was a truck driver for a local fuel oil dealer. The questions in issue are:

I. Whether plaintiff's engagement in activities in commerce [1] or in the production of goods for commerce was "isolated, sporadic, or occasional" or "regular and recurring";

II. Whether plaintiff was "employed in a bona fide * * * local retailing capacity", Sec. 13(a)(1) of the Act, 29 U.S.C.A. § 213(a) (1); and whether defendant is entitled to exemption as a "retail establishment" under Sec. 13(a) (2), 29 U.S.C.A. § 213(a) (2).

1. The word "commerce" will be used herein, as in the Act, to mean interstate commerce.

Plaintiff is now in the Maryland House of Correction. His attorney did not produce him as a witness, but relied on the testimony of defendant's officers, who impressed me with their candor.

## Facts

Defendant owned and operated a coal yard in Baltimore City for many years. Then, as the demand for coal dwindled, it entered the fuel oil business. Its sales now run about 10% coal, 80% fuel oil, and 10% oil burning equipment.

Defendant obtains almost all of its oil from the Esso plant in Dundalk, Baltimore County, Maryland, and stores it in tanks at defendant's plant in Baltimore City. Defendant sells oil to some 1,400 home owners, apartment houses, schools, churches, and eleemosynary institutions, to several dozen commercial establishments and to nine processors (manufacturers). Eight of the processors use oil for processing, as well as for heating and running machinery, and sell in commerce some of the products which they manufacture or process. Defendant's oil burner sales are made mostly to home owners and schools.

Defendant made no sales or deliveries outside the State of Maryland during the years 1957 and 1958. Less than 2% of defendant's sales of coal and oil are sales to others for resale. More than half of the oil sold by defendant was heavy or black oil, although defendant had over 1,300 customers for light oil and only about 100 customers for heavy oil. Light oil is sold mostly to householders who buy 160 to 200 gallons at a time, and to small eleemosynary, commercial or industrial establishments. Heavy oil is sold to establishments having large burner instalations, and was usually delivered in truck-load lots, since such customers usually have large tanks. Most of the heavy oil was delivered to apartment houses, eleemosynary institutions and commercial establishments, rather than to processors.[2]

Prices to customers vary according to the grade of the oil. With respect to light oil the price may vary according to the quantity delivered at one time, because it is cheaper to deliver in truckload lots. Defendant gives no discounts for quantity sales of heavy oil. Concessions are occasionally made to obtain business. All independent dealers and the retail divisions of the major oil companies follow these practices.

The major oil companies operate separate wholesale and retail divisions. The wholesale divisions sell to independents such as defendant at the same prices they charge their own retail divisions. The industry considers all sales made by independent dealers and by the retail divisions of the major companies as retail sales.

Defendant collects Maryland retail sales taxes on all oil, coal and equipment sold, except on sales to charities, to processors for use in processing, and to others for resale.

Plaintiff worked for defendant from 1 January 1957 to 27 June 1957 and from 8 August 1957 to 22 January 1958. He was paid $1.50 per hour straight time during the entire period, although during some weeks he worked more than forty hours and on some days more than eight hours. During the heating season, plaintiff drove a comparatively small, 1,500 gallon tank truck over a regular route in North Baltimore, delivering light oil mostly to residential customers, and to a few apartment houses, schools, churches and stores. From time to time he also made deliveries of heavy oil to all sorts of customers. In the off-season there were no special routes; some of the men were kept on the payroll; they made all types of deliveries and cleaned

---

2. Defendant's customers for heavy oil fall into the following classifications: 30 apartments; 20 eleemosynary institutions; 13 laundries and cleaners; 5 florists; 1 store; 1 private school; 1 restaurant; 6 garages or auto sales rooms; 1 warehouse; 9 processors; 2 clubs; 1 hotel; 2 theatres; 1 industrial building, rented out to various industries; 2 cab companies; 1 plumber's office; 1 bank.

up around the plant. Sixty-five percent of the total gallonage plaintiff delivered was light oil, eighty percent of the dollar volume.

During the year 1957 plaintiff made eight deliveries of oil to processors, each in a different week, and in January, 1958, he made three such deliveries. Two-thirds of those deliveries were heavy oil, one-third light oil. The volume of oil so delivered to processors was only about one and one-quarter percent of all the oil plaintiff delivered during the 55-week period—10,818 gallons vs. 812,651 gallons.

Considering only the eight weeks in 1957 and the three weeks in 1958 in which plaintiff delivered any oil to processors, such deliveries amounted to one or two percent of his total deliveries, between six and seven and one-half percent of the total volume of oil he delivered, and consumed three or four percent of his working time.

## Discussion

### I.

■■ The workweek is the standard for determining the applicability of the Act. The employee may be covered by the Act in one workweek and not in the next. If in any workweek an employee is engaged in both covered and noncovered work, he is entitled to the wage and hour benefits of the Act for all the time worked in that week, unless exempted therefrom by some specific provision of the Act. In considering the question of coverage, as distinguished from the question of exemption, the proportion of an employee's time spent in each type of work is not material. Although employees doing work in connection with mere isolated, sporadic, or occasional shipments in commerce of insubstantial amounts of goods will not be considered covered by virtue of that fact alone, the law is settled that every employee whose engagement in activities in commerce or in the production of goods for commerce, even though small in amount, is regular and recurring, is covered by the act.

Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607. It is the nature of the employee's specific duties rather than the general character of the employer's business which determines whether an employee is covered.

Plaintiff's deliveries to householders, eleemosynary institutions, commercial establishments and the like, were not in commerce. He made only eleven deliveries to processors over a period of fifty-five weeks from 3 January 1957 to 23 January 1958, never more than one a week. The processors were not on his regular route, but he delivered to them as a matter of course when from time to time he relieved another driver on a route which included a processor. He also made occasional deliveries to processors during the summer months or in an emergency.

It is a close question whether such engagement in activities in commerce, even though small in amount, was "regular and recurring" rather than "isolated, sporadic, or occasional". Defendant relies on some lower court decisions before Mabee which would support a disallowance of the claim on this ground, but I doubt whether they are still persuasive. It is not necessary, however, to decide that question in this case.

### II.

. Sec. 13 of the Act, 29 U.S.C.A. § 213, deals with exemptions. It provides in pertinent part:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); or (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 're-

tail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *."

The Regulations with respect to Sec. 13(a) (1) are set out in 29 C.F.R., Part 541. Sec. 541.4 provides:

"*Local retailing capacity.* The term 'employee employed in a bona fide * * * local retailing capacity' in section 13(a) (1) of the act shall mean any employee:

(a) Who customarily and regularly is engaged in:

(1) Making retail sales the greater part of which are in intrastate commerce; or

(2) Performing work immediately incidental thereto, such as the wrapping or delivery of packages, and

(b) Whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by such nonexempt employees."

Sec. 541.4 is repeated as Sec. 541.400. Sec. 541.401(b) provides that the dollar volume test is based on the sales during a representative period.

Far more than 50 percent of the dollar volume of plaintiff's deliveries were always made within the State of Maryland, where plaintiff's place of employment is located. Plaintiff's counsel admits that almost all sales of light oil were retail sales. He contends, however, that sales of heavy oil were sales at wholesale. That is the controlling question in this case with respect to both 13(a) (1) and 13(a) (2). Unless most heavy oil sales are non-retail sales, plaintiff did no work of a nature other than that described in paragraphs (a) (1) or (2) of Reg.Sec. 541.4 except occasional cleaning up

around the plant during the summer months in the intervals between deliveries. The test of paragraph (b) in Sec. 541.4 is met. If all or most of the sales of heavy oil were retail sales, the exemption provided by Sec. 13(a) (1) would apply to Hogue's activities.

So would the exemption provided by Sec. 13(a) (2). More than 50 percent, indeed 100 percent of defendant's annual dollar volume of sales is made within the State of Maryland, where defendant's establishment is located. Only a trifling percentage of its sales, either of oil or coal or equipment, is for resale.

There are no regulations which deal with the "retail establishment exemption" provided for in Sec. 13(a)(2), but a Bulletin containing the Administrator's interpretations of the scope and terms of the exemption appear in 29 C.F.R., Part 779, Sec. 779.5 et seq. This Interpretive Bulletin is very long and deals with many different industries. It also contains references to and quotations from the legislative history of the 1949 amendment to Sec. 13(a). This amendment made obsolete many earlier administrative bulletins and court decisions, particularly Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383.

Counsel for the respective parties have called my attention to several sections of the Bulletin.[3] I have read all of these sections and other sections which are relevant. I agree with plaintiff that in deciding whether certain types of sales are recognized as retail sales in the particular industry, the basis for determination must be wider than the view of an employer or an association of employers; the decision must be based on how such sales are recognized in the industry generally.

After considering all of the evidence in the case, in the light of the legislative history and of the interpretations of the Administrator, I find that sales of heavy oil such as those made by defendant are

---

3. Plaintiff cited Secs. 779.8(a), 779.8(b), 779.9, n. 29, and 779.11; defendant Secs. 779.4, 779.8(b) and (c), 779.9(b), 779.10, 779.11, 779.12, 779.15(c) and 779.16.

recognized as retail sales in the particular industry, and conclude that they are properly so recognized.

### Conclusion

 Plaintiff was employed (1) in a "bona fide * * * local retailing capacity" (2) by a "retail establishment" meeting the tests set out in Sec. 13(a) of the Act, 29 U.S.C.A. § 213(a). Let judgment be entered for the defendant, with costs.